BOIES SCHILLER FLEXNER LLP
JOSHUA I. SCHILLER (SBN 330653)
jischiller@bsfllp.com
2029 Century Park East
Suite 1520
Los Angeles, CA 90067
Telephone:   (213) 629-9040
Facsimile:    (213) 629-9022

BENJAMIN MARGULIS*
bmargulis@bsfllp.com
KATHERINE L. CASSIRER*
kcassirer@bsfllp.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*pro hac vice forthcoming

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIN SEQUENCE, LTD., JEROLD HAMZA as executor for the ESTATE OF GEORGE CARLIN, and JEROLD HAMZA in his individual capacity,<br><br>        Plaintiffs,<br><br>    v.<br><br>DUDESY, LLC, WILL SASSO, CHAD KULTGEN, and JOHN DOES 1-20,<br><br>        Defendants. | Case No. 2:24-cv-00711<br><br>**COMPLAINT FOR DAMAGES**<br>**1. DEPRIVATION OF RIGHT OF PUBLICITY (CAL. CIV. CODE § 3344.1)**<br>**2. VIOLATION OF RIGHT OF PUBLICITY (COMMON LAW)**<br>**3. COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Main Sequence, Ltd., Jerold Hamza as executor for the Estate of George Carlin, and Jerold Hamza in his individual capacity (together, "Plaintiffs", "George Carlin" or "Carlin"), by and through their undersigned attorneys, bring this suit against Defendants Dudesy, LLC, Will Sasso, Chad Kultgen, and John Does 1-20 (collectively "Defendants"), and allege upon personal knowledge as to acts and events taking place in their presence, and upon information and belief for all other acts as follows:

## NATURE OF THE ACTION

1.     The late George Carlin is considered by many to be one of the greatest and most influential comedians to have lived.  Over the course of a decades-long career, Carlin's sharp insight into society and talent for boundary-pushing comedy helped criticize, satirize, and expose many aspects of modern life.

2.     Often referred to as the "dean of counterculture comedians," Carlin was a prolific artist, showcasing his keen-eyed and sharp-tongued humor on almost two dozen albums featuring his performances, in more than a dozen HBO standup comedy "specials," and as the author of a half-dozen books.  He also appeared in a long list of films and television shows.

3.     Unfortunately, George Carlin passed away in June 2008.

4.     More than 16 years later, Defendants took it upon themselves to "resurrect" Carlin with the aid of artificial intelligence ("AI").  Using Carlin's original copyrighted works, Dudesy LLC (along with some combination of Will Sasso, Chad Kultgen, and the John Doe defendants) created a script for a fake George Carlin comedy special and generated a sound-alike of George Carlin to "perform" the generated script.

5.     The resulting AI-created "George Carlin Special"—titled "I'm Glad I'm Dead"—was made available to the public on the Dudesy podcast's YouTube channel on January 9, 2024.

6.     None of the Defendants had permission to use Carlin's likeness for the AI-generated "George Carlin Special," nor did they have a license to use any of the late

comedian's copyrighted materials.

7.     Plaintiffs therefore bring this action for copyright infringement and violation of Carlin's right of publicity caused by Defendants' unauthorized use of Carlin's works to create their AI-generated "George Carlin Special"—an hour-long fake comedy show that purports to be in George Carlin's voice and reflect how Carlin would have commented on current events since his death in 2008.

8.     Defendants' AI-generated "George Carlin Special" is not a creative work. It is a piece of computer-generated click-bait which detracts from the value of Carlin's comedic works and harms his reputation.  It is a casual theft of a great American artist's work.

9.     In addition to the immediate fact of infringement, Defendants' AI-generated "George Carlin Special" may also deter younger audiences, who are unfamiliar with George Carlin, from engaging with his real work that is his legacy.  Defendants must be held accountable for adding new, fake content to the canon of work associated with Carlin without his permission (or that of his estate).

10.    In the words of Carlin's daughter Kelly Carlin, "My dad spent a lifetime perfecting his craft from his very human life, brain, and imagination.  No machine will ever replicate his genius."[1]

## THE PARTIES

11.    Plaintiffs own and represent all of the intellectual property rights of the late George Carlin, who was an actor and comedian who resided in California, including the copyright rights associated with Carlin's albums and comedy standup specials.

---

[1] Maya Yang, *George Carlin's daughter lambasts AI-generated video of late comedian*, The Guardian (January 11, 2024), available at https://www.theguardian.com/technology/2024/jan/11/george-carlin-ai-comedy (last accessed January 25, 2024).

COMPLAINT

12.     Plaintiff Main Sequence, Ltd. is a California corporation with its principal place of business located in the State of Maine, and is in the care of Jerold Hamza, who is also the executor of the Estate of George Carlin.

13.     Plaintiff Jerold Hamza as executor for the Estate of George Carlin ("Estate") is the estate of the late comedian, George Carlin.  Jerold Hamza is the executor of the Estate and acts on its behalf.

14.     Plaintiff Jerold Hamza is George Carlin's long-time manager and the executor of the Estate of George Carlin.  Plaintiff Hamza is a resident of Maine.

15.     Defendant Dudesy, LLC is a California limited liability company that operates a website and a podcast disseminated to the public on the internet.

16.     Defendant Will Sasso is an actor and comedian who performs in the Dudesy podcast with Defendant Chad Kultgen.  Upon information and belief, Mr. Sasso resides in Los Angeles, California.

17.     Defendant Chad Kultgen is a writer and podcaster.  Mr. Kultgen is a member of Dudesy, LLC, in addition to performing in the Dudesy podcast with Defendant Will Sasso.  Upon information and belief, Mr. Kultgen resides in California.

18.     John Does 1-5 are the creators of the AI program associated with Dudesy.

19.     John Does 6-20 are individuals or entities who contributed to the creation, production, and sponsorship of the Dudesy program entitled "George Carlin:  I'm Glad I'm Dead."

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C. § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*).

21.     This Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has general personal jurisdiction over Defendants because Defendant Dudesy LLC is registered in California and has its principal place of business in West Hollywood, California.

23.     This Court has specific personal jurisdiction over Defendants because Defendant Dudesy, LLC is registered in California, Defendants Will Sasso and Chad Kultgen reside in California, and the acts giving rise to the claims occurred in California.

24.     Venue is proper in in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), and § 1400(a), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

**A.     The Real George Carlin: "The Dean of Counterculture Comedians"**

25.     George Carlin (pictured below) is widely regarded as one of the world's most prominent stand-up comedians.  Dubbed the "the dean of counterculture comedians" in a nod to the politically charged nature of his work, the body of work



Carlin created during his fifty-plus-year career reflects his unique worldview and comedic voice.

26.    Carlin's accolades include four Grammy Awards and a star on the Hollywood Walk of Fame, received in 1980.  Just prior to Carlin's death in 2008, he was awarded the Mark Twain Prize for American Humor in 2008 (passing away days after the Kennedy Center's announcement that he would receive the award).  And both Rolling Stone magazine and Comedy Central ranked Carlin second in their respective lists of top stand-up comedians.  The Emmy-winning HBO Documentary "George Carlin's American Dream", which was released in 2022, chronicled Carlin's life and work.

27.    Over the course of his career in the entertainment world, which spanned five decades, Carlin's audience grew to include millions of fans.  Carlin appeared on The Tonight Show over 100 times, in addition to many other major television appearances, putting on over 100 live performances per year, releasing comedy albums, and writing books.[2]

28.    Known, in part, for irreverent, boundary-pushing comedy, Carlin's famous 1972 monologue titled "Seven Words You Can Never Say on Television" has become legendary in comedy circles (and beyond).  After Carlin was arrested for disturbing the peace following his performance of the monologue in Milwaukee, Carlin's monologue was later broadcast on the radio, leading to the landmark decision in *FCC v. Pacific Foundation*, 438 U.S. 726 (1978) (calling Carlin's act "indecent but not obscene").

29.    In an ironic twist, the "Seven Words You Can Never Say on Television" monologue would appear *on television* in 1977, during Carlin's first HBO comedy special, *George Carlin at USC*.  Carlin would go on to release *fourteen* such stand-up

---

[2] Mel Watkins and Bruce Weber, *George Carlin, Comic Who Chafed at Society and Its Constraints, Dies at 71*, New York Times (June 24, 2008), available at https://www.nytimes.com/2008/06/24/arts/24carlin.html (last accessed January 25, 2024).

comedy specials for HBO, with the final one—*It's Bad for Ya*—coming out in March 2008, less than three months before Carlin's death.

30.     As a recent article aptly put it: "Carlin was an incredibly hard voice to pin down: Profane, cranky, cynical, strangely hopeful, and often, shockingly, silly, playing with language, ideas, political concepts, and more in an effort to both delight people and make them think."[3]

31.     In no small part, the modern rise of comedy specials (*e.g.*, on Netflix), can be attributed to Carlin's prolific output.  Were it not for him, the stand-up comedy specials that are popular on streaming services like Netflix today may not enjoy the same popularity and widespread appeal.  Nor would comedians command eight-figure paydays for such specials, with the more popular comedians earning up to $20 million for just one such performance.

32.     The following image is taken from Carlin's 1996 HBO special *Back in Town*, showing his hallmark gray ponytail:



---

[3] William Hughes, *Today feels like a good day to ignore dumb AI stunts and watch the real George Carlin*, AV Club (January 11, 2024), available at https://www.avclub.com/george-carlin-ai-stunt-cant-compare-to-the-real-thing-1851161376 (last accessed January 25, 2024).

COMPLAINT

**B.     The Dudesy Podcast**

33.     In March 2022, Dudesy LLC released the first full episode of the "Dudesy" podcast.  That episode, titled "Call me Dudesy," introduced the two hosts of the podcast—Will Sasso and Chad Kultgen—and the show's premise: that it was purportedly written, created, and controlled by an AI program called "Dudesy AI" that had access to the written works and online activity of the two human hosts.

34.     The description of the Dudesy Podcast on Apple Podcasts states: "Entertainment professionals and longtime friends Will Sasso and Chad Kultgen have been selected by a first of its kind A. I. to host this groundbreaking podcast.  Will and Chad have agreed to grant Dudesy A.I. access to their personal emails, text messages, social media accounts, purchase and browsing histories, etc., so that it can tailor the show to their specific personalities and entertain you at the highest level possible."[4]

35.     Defendants Will Sasso and Chad Kultgen have publicly stated that they are not at liberty to disclose the name of the company that created and programed the Dudesy AI.[5]

36.     The Dudesy Podcast has an accompanying YouTube channel (@Dudesy), Instagram handle (@dudesypodshow), X (formerly Twitter) account handle (@dudesypodshow), and TikTok account (@dudesypodshow).  The podcast itself is available through, among others, Spotify and Apple Podcasts.

37.     The Dudesy Podcast's premise is timely (and deliberately chosen) given the recent explosion of artificial intelligence-based technologies (*e.g.*, ChatGPT, Midjourney, etc)  It is also problematic because it has (on at least two occasions) used

---

[4] *See* Dudesy on Apple Podcasts, available at https://podcasts.apple.com/us/podcast/dudesy/id1611415318 (last accessed January 25, 2024).

[5] Claire Wilson, *Meet 'Dudesy:' The AI that hosts a comedy podcast with B.C.-born actor Will Sasso*, Business in Vancouver (May 9, 2023), available at https://biv.com/article/2023/05/meet-dudesy-ai-hosts-comedy-podcast-bc-born-actor-will-sasso (last accessed January 25, 2024).

the likenesses, images, voices, and copyrighted works of public figures to generate its Dudesy Specials without the required legal permissions.

38.     Prior to the AI-generated "George Carlin Special" created by Dudesy and at issue in this lawsuit, Dudesy created another one-hour "Special", which depicted an AI-generated Tom Brady performing an AI-generated standup comedy routine.

39.     That video, titled "It's Too Easy: A Simulated Hour-Long Comedy Special" was taken down by its Dudesy creators after Mr. Brady threatened to sue.

40.     Unfortunately—but perhaps unsurprisingly given how easy it is to save and upload videos to the internet—that video was subsequently re-uploaded to YouTube by a third party, where it is currently publicly available despite Mr. Brady's objection.

**C.     The AI-Generated George Carlin:  Defendants' Unauthorized Use of Carlin's Likeness & Materials**

41.     On January 8, 2024, the Dudesy podcast's Instagram account posted an AI-generated image of George Carlin with the comment "Tomorrow.  Call me Dudesy.":



COMPLAINT

42.     The next day, January 9, 2024, Episode 87 of the Dudesy podcast released with the title "George Carlin Resurrected."  The thumbnail image for the accompanying YouTube video features both Defendant Sasso and Defendant Kultgen (who are generally included in the thumbnail images) with yet another AI-generated image of George Carlin:



43.     In the January 9 Dudesy podcast episode, after watching and listening to several minutes of the full AI-generated "George Carlin Special," the hosts engage in the following exchange:

> 26:39 KULTGEN:  What we just listened to, was that passable to you as George Carlin?
>
> 26:43 SASSO:  Yeah, that sounded exactly like George Carlin.
>
> 26:46 KULTGEN:  Me too, it sounded very close to him for sure.  The delivery, the intonation, all that shit—it seemed very good to me.

26:56 SASSO:  Did Dudesy say that that shit is on YouTube
              now?

26:59 KULTGEN:  Yeah.  A full hour of this.  Which I have to
              watch as soon as we're done today.

        . . .

27:16 SASSO:  At which point this is out, there is also
              concurrently an hour of that shit.

27:23 KULTGEN:  New George Carlin.  And what does that
              even mean?  I don't know what's in it.

44.    Later in the same episode ("George Carlin Resurrected"), Defendant Kultgen says the following (at 28:15):  "This is a person—George Carlin died . . . before 2010, I think—and now he's been resurrected by an AI to create more material."

45.    And, indeed, the same day, Dudesy LLC also released an hour-long video containing the full AI-generated "George Carlin Special" titled "George Carlin: I'm Glad I'm Dead (2024) – Full Special."  The video used an AI-generated sound-alike of George Carlin to read out and perform an AI-generated script written in Carlin's style of humor.[6]

---

[6] *See* Dudesy YouTube channel, available at https://www.youtube.com/@Dudesy (last accessed January 25, 2024).

46.     Like other Dudesy videos, "George Carlin: I'm Glad I'm Dead (2024)" was released with an accompanying thumbnail image featuring an AI-generated image designed to look like the legendary comedian facing his audience from the stage and sporting his tell-tale gray-haired ponytail:



47.     As the introductory voiceover for the video explained: Dudesy LLC (via Dudesy AI) ingested five decades of Carlin's original standup comedy routines (to which Plaintiffs own the copyright) into the training database of an artificial intelligence engine (Dudesy AI), thereby making unauthorized copies of the copyright works.  Based on these unauthorized copies, the Dudesy AI was thereafter used to create the AI-generated "George Carlin Special".

48.     Defendants therefore admitted that they input thousands of hours of George Carlin's original, copyrighted routines to an AI machine that Defendants operate to fabricate a semblance of Carlin's voice and generate a Carlin stand-up comedy routine.

### D.     Dudesy's AI-Generated George Carlin Special

49.     The AI-generated "George Carlin Special" ("Dudesy Special") opens with an introductory segment in which a voice calling itself "Dudesy" (the computer-generated host of the podcast) states "**I listened to all of George Carlin's material** and did my best to imitate his voice, cadence, and attitude, as well as the subject matter I think would have interested him today."[7] (emphasis added).

50.     Assuming Defendants' representation that the Dudesy Special was created by artificial intelligence is accurate, the result was not created by "listening."  AI models do not "listen"; they apply algorithms to data inputs in order to generate an output. Here, the data input was George Carlin's entire corpus of copyrighted works.

51.     In the Dudesy Special, Defendants state that Dudesy developed its hour-long George Carlin special "in the exact same way a human impressionist would."  This statement is false because the artificial intelligence model's unauthorized ingestion of George Carlin's entire life's work is not analogous to how a "human impressionist" would have developed a work inspired by Carlin.

52.     The Dudesy Special, which was created through the unauthorized use of Carlin's copyrighted work, is not George Carlin's work.  The Dudesy Special is an output generated by a technological process that is an unlawful appropriation of Carlin's identity, which also damages the value of Carlin's real work and his legacy.

53.     By Defendants' own admission, Dudesy used its AI-created impersonation of Carlin's "voice" in the Dudesy Special to discuss the topics including "the increasing role of technology in society as AI is poised to change humanity forever", among other topics in current events.[8]

---

[7] *See* "George Carlin: I'm Glad I'm Dead (2024) – Full Special," Dudesy (January 9, 2024), available at https://www.youtube.com/watch?v=2kONMe7YnO8 (last accessed January 25, 2024).

[8] *Id.*

54.     Defendant's own description of the Dudesy Special on YouTube reads "For the next hour I'll be doing my best George Carlin impersonation just like a human being would.  I tried to capture his iconic style to tackle the topics I think the comedy legend would be talking about today."[9]

55.     This association between the Dudesy Special and George Carlin that Defendants carefully cultivated arises from two separate acts by Defendants:  First, Defendants created the Dudesy Special through their unauthorized use of Carlin's copyrighted works.  Second, Defendants' used Carlin's name and likeness (including his voice) to promote their Dudesy Special.

56.     The Dudesy Special therefore has no comedic or creative value absent its self-proclaimed connection with George Carlin.  It does not, for example, satirize Carlin as a performer or offer an independent critique of society.

57.     This holds true even if Defendants falsely ascribed the creation of the Dudesy Special to the so-called "Dudesy AI."  In a follow-up Dudesy podcast episode released on January 16, 2024 and titled "A.I. Carlin Explained," Defendants Kultgen proposed that "anyone could have made [the Dudesy Special] with technology that is readily available to every person on planet Earth right now."  Tellingly, however, the final step in Defendant Kultgen's description—after the human actor "write[s] a brand new [comedy] special" script—is to "take that script and upload it into any number of AI voice generators."[10]

58.     Thus, whether the Dudesy Special is indeed, from start to finish, the product of an artificial intelligence or simply relies on AI-powered tools to help a human better imitate George Carlin, the result is ultimately same:  Defendants always promoted and

---

[9] *Id.*

[10] *See* "A.I. Carlin Explained | Dudesy w/ Will Sasso & Chad Kultgen ep. 88," Dudesy (January 16, 2024), available at https://www.youtube.com/watch?v=kQoQPZplhNA (last accessed January 25, 2024).

presented the Dudesy Special as an AI-generated George Carlin comedy special, where George Carlin was "resurrected" with the use of modern technology.  In short, Defendants sought to capitalize on the name, reputation, and likeness of George Carlin in creating, promoting, and distributing the Dudesy Special and using generated images of Carlin, Carlin's voice, and images designed to evoke Carlin's presence on a stage.

59.    The association of the Dudesy Special with George Carlin is harmful to Carlin's reputation, his legacy, and to the value of his real work.

60.    Indeed, for younger people, and anyone else who may not be familiar with Carlin's real work, the Dudesy Special will be synonymous with Carlin, or at the very least their only point of reference for him.

61.    Indeed, anyone who first encounters Carlin in the context of the Dudesy Special will form an impression of Carlin that is (wrongfully) tethered to the Dudesy Special rather than to his copyrighted works.  This group of individuals will improperly associate the Dudesy Special with Carlin's real work.

62.    This harms Plaintiffs because it discourages people who may be unfamiliar with Carlin's work from seeking it out, misrepresents Carlin's art, and takes the introduction of Carlin's work away from where it properly lies—with the words of his real work and the owners of its copyrights—and puts it into the hands of the Dudesy Special.

63.    Worse, if not curtailed now, future AI models may incorrectly associate the Dudesy Special with Carlin, ultimately folding Defendants' knockoff version in with Carlin's actual creative output.

64.    Indeed, there has been significant press coverage of Carlin's association with the Dudesy Special since it was released.  This press coverage focuses on Carlin, but not on Carlin's real work: it refers to Carlin's work in reference to the Dudesy Special's fake version of his "voice."

65.     For example, a USA Today article dated January 10, 2024—one day after the AI-Output was released—is titled "George Carlin is Coming Back to Life in New AI-Generated Comedy Special."  The article states that the "AI Icon is True to Form", suggesting that the AI-generated output that Defendants procured was or would have been something that Carlin would have said.

### E.     Defendants Exploit George Carlin's Identity for Profit

66.     Both during the runup to releasing Dudesy's AI-generated "George Carlin Special," and over the following days and weeks, Defendants continued to profit from the association of the Dudesy Special with George Carlin.

67.     Dudesy's Instagram profile, where Defendants initially teased the release of the Dudesy Special using an AI-generated image of George Carlin, provides users with a link to an online store selling Defendants' merchandise, as well as a link to Defendants' Patreon webpage where users can subscribe to a membership in "Dudesy+" for $7 per month.

68.     And while the YouTube video "George Carlin: I'm Glad I'm Dead (2024) – Full Special" was purportedly not monetized by Defendants—*i.e.*, contained no advertisements that Defendants chose to include—the same does not hold true for the other Dudesy podcast videos that deal with the Dudesy Special.   Both "George Carlin Resurrected | Dudesy w/ Will Sasso & Chad Kultgen ep. 87" and "A.I. Carlin Explained | Dudesy w/ Will Sasso & Chad Kultgen ep. 88" include advertisements on YouTube, for which Defendants receive revenue.

69.     Additionally, both "George Carlin Resurrected | Dudesy w/ Will Sasso & Chad Kultgen ep. 87" and "A.I. Carlin Explained | Dudesy w/ Will Sasso & Chad Kultgen ep. 88" indicate that they "[i]nclude[] paid promotion" on YouTube, meaning that advertisements for sponsored products and services are read during the Dudesy podcast itself.  Defendants are paid to read the sponsored advertisements out during the Dudesy episodes (including those dealing with the AI-generated "George Carlin

Special") and the sponsorships are offered to Defendants based on the popularity and size of the Dudesy podcast's audience (which Defendants sought to bolster by releasing the Dudesy Special).

70.   Furthermore, *all* of Dudesy's YouTube videos—including the supposedly unmonetized "George Carlin: I'm Glad I'm Dead (2024) – Full Special"—include prominent hyperlinks to the "Dudesy Apparel & Accessories" store as well as Dudesy's Patreon page selling paid monthly subscriptions to "Dudesy+", from which Defendants earn further revenue:



71.   Even clips of the relevant Dudesy podcast episode videos were a vector for profits.  On a YouTube channel run by Defendants called "Dudesy Clips," Defendants also posted a pair of videos—"New 'George Carlin' Special Created by AI | George

Carlin: I'm Glad I'm Dead"[11] and "A.I. Carlin: Reacting to the Reactions"[12]—that include advertisements and the same hyperlinks to Defendants' merchandise store and Patreon subscription page.

72.     Defendants' formula was therefore simple: if more people saw Dudesy's content based on Defendants' exploitation of George Carlin's name, likeness, and copyrighted works, then more people would see advertisements, would hear the paid sponsorships read during the Dudesy podcast episodes, and would have an opportunity to click through the hyperlinks to buy the Defendants' merchandise and subscribe to Dudesy+. In turn, the audience for Dudesy's offerings would grow, which itself would attract more sponsors.  All this would inevitably lead to more money for Defendants. And if they had to exploit a deceased comedy legend along the way?  So be it.

73.     In fact, Defendants took steps to use the public and media attention generated by the Dudesy Special to generate further publicity for themselves based upon their use of George Carlin's life's work.  For example, the episode of the Dudesy podcast released on January 14, 2024, titled "A.I. George Carlin Explained," focuses on viewer reactions to the Dudesy Special, and Will Sasso and Chad Kultgen's reactions to those reactions.[13]

74.     The Dudesy Special would have no value in the first instance absent its unauthorized use of Carlin's copyrighted works, and absent its association with Carlin. Carlin's work and reputation has been coopted by Defendants to lend credibility to their Dudesy Special.

---

[11] *See* "New 'George Carlin' Special Created by AI | George Carlin: I'm Glad I'm Dead," Dudesy Clips, available at https://www.youtube.com/watch?v=Lv1z9sFtN3s (last accessed January 25, 2024).

[12] *See* "A.I. Carlin: Reacting to the Reactions," Dudesy Clips, available at https://www.youtube.com/watch?v=ZHIf5rgock8 (last accessed January 25, 2024).

[13] *See* "A.I George Carlin Explained," Dudesy Podcast (January 16, 2024), available at https://podcasts.apple.com/us/podcast/dudesy/id1611415318 (last accessed January 25, 2024).

75.     The Dudesy Special (and through it, Carlin) has become a prominent case-study in a discourse about the relationship between AI and human creativity. Defendants' use of George Carlin's voice, reputation, and work, to create the Dudesy Special was unauthorized.  Because of Defendants' actions, Carlin's voice is now being used as a conduit to dissect the relationship between art and AI, a topic of public discourse that did not exist during Carlin's lifetime.

76.     The Dudesy Special is a bastardization of Carlin's real work and his legacy. George Carlin, if he were alive today, may well have commented upon the topics discussed in the Dudesy Special, but he would have had control over what those comments were.

77.     The Dudesy Special has caused severe and continuing harm to Carlin's legacy and the value of his copyrighted works for several reasons, including that as it (and the accompanying media coverage) gains viewers and listeners, younger people and others unfamiliar with his real work will not be able to experience it except against the backdrop of the Dudesy Special.

78.     The Dudesy Special, which presumes to opine on what Carlin would have said is conjecture, which dilutes the value of his real work, and harms his reputation.

79.     Ultimately, in addition to its unauthorized use of his copyrighted works, the Dudesy Special detracts from Carlin's many decades of honing his craft through hard work and original thought by adding new content to the cannon of work associated with Carlin without Plaintiffs' permission.

## **CLAIMS**

### **CLAIM I**

### **VIOLATION OF RIGHTS OF PUBLICITY—CAL. COMMON LAW**

### **(against All Defendants)**

80.     Plaintiffs repeat and re-allege Paragraphs 1-79 as if fully set forth herein.

81.     Defendants have knowingly and intentionally utilized and continue to utilize the name, image and likeness of Carlin without the consent of Plaintiffs. This conduct has occurred in and emanated from California, specifically from West Hollywood, California, where Dudesy, LLC's principal office is located.

82.     Defendants have knowingly and intentionally used and continue to knowingly and intentionally use Carlin's name, image and likeness for the purposes of advertising, selling and soliciting traffic to Dudesy, LLC's podcast, website, YouTube channel, and social media accounts.  Most decisions and policy relating to this conduct have occurred in and emanated from California, including because Defendants Will Sasso and Chad Kultgen live in California.

83.     Defendants have therefore willfully misappropriated Carlin's likeness and violated his rights of publicity.

84.     On December 1, 2014, Plaintiffs filed a valid Registration of Claim as Successor-in-Interest to Carlin's rights of publicity with the Secretary of State of the State of California.

85.     As a result of Defendants' misappropriation of Carlin's publicity rights, Plaintiffs have been injured.

## CLAIM II

## DEPRIVATION OF RIGHTS OF PUBLICITY—CAL. CIV. CODE § 3344.1
### (against All Defendants)

86.     Plaintiffs repeat and re-allege Paragraphs 1-79 as if fully set forth herein.

87.     Defendants have knowingly and intentionally utilized and continue to utilize the name, image and likeness of Carlin without the consent of Plaintiff. This conduct has occurred in and emanated from California, specifically from West Hollywood, California, where Dudesy, LLC's principal office is located.

88.     Defendants have knowingly and intentionally used and continue to knowingly and intentionally use Carlin's name image and likeness for the purposes of

advertising, selling and soliciting traffic to Dudesy, LLC's podcast, website, YouTube channel, and social media accounts.  Most decisions and policy relating to this conduct have occurred in and emanated from California.

89.    Defendants have therefore willfully misappropriated Carlin's likeness and violated his rights of publicity.

90.    On December 1, 2014, Plaintiffs filed a valid Registration of Claim as Successor-in-Interest to Carlin's rights of publicity with the Secretary of State of the State of California.

91.    As a result of Defendants' misappropriation of Carlin's publicity rights, Plaintiffs have been injured.

## CLAIM III

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

### (against All Defendants)

92.    Plaintiffs repeat and re-allege Paragraphs 1-79 as if fully set forth herein.

93.    Plaintiffs have properly applied to register, and own and control, the copyrights to the works of George Carlin.

94.    Without authorization from Plaintiffs, or any right under law, Defendants have unlawfully used Plaintiffs' copyrighted works for building and training a dataset for purposes of generating an output intended to mimic Plaintiffs' copyrighted work (i.e., Carlin's stand-up comedy).  Such actions infringe Plaintiffs' exclusive rights in the copyrighted works.

95.    The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Plaintiffs' rights.

96.    As a direct and proximate result of Defendants' infringement of Plaintiffs' exclusive rights under copyright, Plaintiffs are entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b), including but not limited to advertising revenues.

97.     Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

98.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

99.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements of her copyright and exclusive rights under copyright.

### **PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendants as follows:

A.     For a preliminary and a permanent injunction enjoining Defendants and their respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with each or any of them, from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating use of George Carlin's copyrighted works to generate Dudesy Specials and any other contents created or disseminated by Dudesy, LLC relating to those Dudesy Specials.

B.     For a preliminary and a permanent injunction directing Defendants and their respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with each or any of them, to immediately remove, take down, and destroy any video or audio copies (including partial copies) of the "George Carlin Special," wherever they may be located.

C.     For all damages to which Plaintiffs may be entitled, including but not limited to Defendants' profits, in such amounts as may be found.  Alternatively, as

Plaintiffs' election, for statutory damages in the maximum amount allowed by law.

      D.     For special damages arising from reputational harm, loss of business and business opportunities, according to proof at trial.

      E.     For exemplary and punitive damages.

      F.     For attorneys' fees and costs of suit incurred herein.

      G.     For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial on all issues to the extent permitted by law.


Dated:  January 25, 2024        BOIES SCHILLER FLEXNER LLP

                                */s/ Joshua I. Schiller*
                                Joshua I. Schiller
                                jischiller@bsfllp.com
                                2029 Century Park East
                                Suite 1520
                                Los Angeles, CA 90067
                                Telephone:  (213) 629-9040
                                Facsimile:   (213) 629-9022

                                Benjamin Margulis*
                                bmargulis@bsfllp.com
                                Katherine L. Cassirer*
                                kcassirer@bsfllp.com
                                55 Hudson Yards
                                New York, NY 10001
                                Telephone: (212) 446-2300
                                Facsimile: (212) 446-2350

                                *pro hac vice forthcoming

                                *Attorneys for Plaintiffs*
                                *Main Sequence, Ltd., Jerold Hamza as*
                                *Executor for the Estate of George Carlin*
                                *and Jerold Hamza in his individual Capacity*